**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

CHRISTOPHER R.,[1]

Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

Case No. 1:25-cv-692

Bowman, C.M.J.

**MEMORANDUM OF OPINION AND ORDER**

Plaintiff Christopher R. filed this Social Security appeal in order to challenge the Defendant's finding that he is not disabled. *See* 42 U.S.C. § 405(g). Proceeding through counsel, Plaintiff presents four claims of error, all of which the Defendant disputes. As explained below, the Administrative Law Judge (ALJ)'s finding of non-disability is AFFIRMED, because it is supported by substantial evidence in the administrative record. The parties have consented to the jurisdiction of the undersigned magistrate judge. *See* 28 U.S.C. §636(c).

**I. Summary of Administrative Record**

Plaintiff applied for disability insurance benefits (DIB) in September 2017, alleging disability as of July 2015. (Tr. 273-80, 4563). After a hearing, Plaintiff's claims were denied; however, this Court remanded that decision in April 2024. (Tr. 4652). Thereafter

[1]The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to claimants only by their first names and last initials. *See* General Order 22-01.

on March 20, 2024, the ALJ held a second hearing, at which Plaintiff, who was represented by counsel, and a vocational expert testified. On July 12, 2024, the ALJ issued a written decision, concluding that Plaintiff was not disabled. (Tr. 4563-80). The Appeals Council denied Plaintiff's request for review. (Tr. 4546-4549). Therefore, the ALJ's decision stands as the Defendant's final determination.

Plaintiff was born in September 1987 and was 32 years old on his last date insured. He graduated high school and has no past relevant work. (Tr. 4577). In July 2015, Plaintiff was involved in a severe motorcycle accident, wherein he sustained multiple injuries in the accident including laceration of the liver, spleen, and bowel; a fracture of the right scapula; a fracture of the right clavicle; an open pelvic fracture; multiple rib fractures; head trauma; paresis of the lower extremities; and significant blood loss which required embolization of multiple arteries. (Tr. 4572).

Based upon the record and testimony presented at the hearing, the ALJ found that Plaintiff had the following severe impairments: "spine disorders, residuals from lower extremity fracture, neurogenic bladder with stimulator." (Tr. 4566). The ALJ concluded that none of Plaintiff's impairments alone or in combination met or medically equaled a listed impairment in 20 C.F.R. Part 404, Subp. P, Appendix 1. Despite these impairments, the ALJ determined that Plaintiff retains the RFC to perform light work subject to the following limitations:

> He can frequently climb ramps and stairs, but never climb ladders, ropes, or scaffolds. The claimant could frequently kneel and crouch. The claimant had to avoid concentrated exposure to extreme cold. He had to avoid all exposure to dangerous hazards of unprotected heights and dangerous heavy machinery.

(Tr. 4570).

Based upon the RFC and testimony from the vocational expert, the ALJ concluded that Plaintiff could perform jobs in the national economy including packager, merchandise marker and screener. (Tr. 4578, 4579). Accordingly, the ALJ determined that Plaintiff is not under disability, as defined in the Social Security Regulations, and is not entitled to SSI. *Id.*

The Appeals Council denied Plaintiff's request for review. Therefore, the ALJ's decision stands as the Defendant's final determination. On appeal to this Court, Plaintiff argues that the ALJ erred by: (1) failing to comply with the Appeals Council's remand Order; (2) improperly evaluating his bladder symptoms and subjective allegations; (3) inadequately assessing whether Plaintiff's impairments or combination of impairments met or equaled Listing; and (4) failing to give a proper hypothetical question to the vocational expert. Upon close analysis, I conclude that Plaintiff's assignments of error are not well-taken.

## II. Analysis

### A. Judicial Standard of Review

To be eligible for benefits, a claimant must be under a "disability." *See* 42 U.S.C. §1382c(a). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by

substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion.... The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

In considering an application for supplemental security income or for disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his or her past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Commissioner of Soc. Sec.*,

459 F.3d 640, 643 (6th Cir. 2006); see also *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528-29 (6th Cir. 1997) (explaining sequential process); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that he is entitled to disability benefits. 20 C.F.R. § 404.1512(a). A claimant seeking benefits must present sufficient evidence to show that, during the relevant time period, he suffered an impairment, or combination of impairments, expected to last at least twelve months, that left him unable to perform any job. 42 U.S.C. § 423(d)(1)(A).

**B. The ALJ's Decision is supported by Substantial Evidence**

*1. Appeals Council's Remand Directive*

As noted above, Plaintiff filed his Title II application on November 13, 2017, alleging disability beginning July 11, 2015. His claim was denied initially and on reconsideration. Following an administrative hearing, an ALJ issued an unfavorable decision on January 21, 2021. The first ALJ found that Plaintiff's neurogenic bladder was non-severe, reasoning in part that it had been surgically repaired and that later records did not reflect urinary frequency or urgency. (Tr. 51–60.)

After a federal-court remand, the Appeals Council vacated the prior decision and remanded the matter for further proceedings. The Appeals Council directed the ALJ to further evaluate Plaintiff's impairments at Step Two; reconsider the prior administrative medical findings; reassess Plaintiff's maximum residual functional capacity ("RFC") with specific references to record evidence; obtain supplemental vocational-expert ("VE") testimony; and resolve any conflict between the VE testimony and the Dictionary of Occupational Titles ("DOT") before relying on the VE evidence. (Tr. 4624.)

Plaintiff argues that the ALJ failed to comply with the remand order in his evaluation of Plaintiff's bladder disfunction and neurogenetic bladder. Plaintiff's assertion is unavailing.

Here, the ALJ expressly found neurogenic bladder with a stimulator to be a severe impairment. (Tr. 4566.) Namely, the ALJ also addressed the impairment in the RFC discussion, including evidence concerning the period both before and after the April 2017 urinary-sphincter procedure. The ALJ's decision notes that Plaintiff's post-accident discharge diagnoses included neurogenic bladder and neurogenic bowel. (Tr. 4572). In November 2015, Plaintiff was documented as having urinary incontinence, was diagnosed with neurogenic bladder, and was considering surgical treatment. (Id.) In December 2015, Plaintiff was described as having intermittent urinary incontinence. (Id.) By February 2016, records indicated that he was pursuing non-surgical interventions for neurogenic bladder. (Id.) The ALJ further discussed the April 2017 urinary-sphincter surgery, Plaintiff's August 2017 report to a neurologist that he wore Depends, and Plaintiff's hearing testimony that he had bowel and bladder accidents and used protective garments. (Tr. 4572–73, 4570–71).

The ALJ concluded that the record did not substantiate additional limitations for unscheduled restroom breaks, off-task behavior, or work absences. Substantial evidence supports that finding. The ALJ observed that records after the initial recovery period reflected few bladder complaints and little, if any, related treatment. (Tr. 4576). The ALJ also reasonably relied on the fact that the early-2016 record described only intermittent urinary incontinence, the condition was surgically repaired, and later records repeatedly documented denials of genitourinary problems, difficulty urinating, frequency,

or urgency. (Tr. 4574–76). In March 2019, Plaintiff reported that he had a bladder stimulator and was overall doing well. (Tr. 4575). In June 2019, he denied difficulty urinating, frequency, and urgency; in December 2019 and January 2020, he denied genitourinary issues. (Id.)

The ALJ also considered the intermittent nature of early incontinence, the treatment course, surgery, the limited later complaints and treatment, later symptom denials, and the longitudinal evidence as a whole. (Tr. 4572–77) This analysis provided an adequate basis for the ALJ to decline to add a particular break, off-task, or attendance limitation.

Moreover, the decision identifies no medical opinion prescribing a frequency of unscheduled breaks, assigning an off-task percentage, or finding that Plaintiff would be absent at a work-preclusive rate. The RFC need only incorporate limitations that the ALJ reasonably finds supported by the record. The ALJ’s evaluation of Plaintiff’s bladder-related allegations satisfies that requirement.

As noted by the Commissioner, the Appeals Council required further evaluation and a reasoned RFC determination; it did not require the ALJ to adopt particular restroom, off-task, or absenteeism restrictions. (Tr. 4655). The remand decision satisfied the directive by identifying neurogenic bladder as severe, reviewing the pre- and post-surgical evidence, reconsidering medical findings, articulating an RFC rationale with record citations, and obtaining new VE testimony. Plaintiff has not shown a failure to comply with the remand order.

2. *Listing 1.16*

Plaintiff challenges the ALJ's finding that he had not met or equaled Listing 1.16 (Lumbar spinal stenosis resulting in compromise of the cauda equina). At the third step, a claimant will be found disabled if his impairment meets or medically equals one of the listings in the Listing of Impairments. 20 C.F.R. § 416.920(a)(4)(iii); *Turner v. Comm'r of Soc. Sec.,* 381 F. App'x 488, 491 (6th Cir. 2010). The Listing of Impairments, set forth in Appendix 1 to Subpart P of the regulations, describes impairments the Social Security Administration considers to be "severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. §§ 416.925(a), 404.1525(a). Each listing specifies "the objective medical and other findings needed to satisfy the criteria of that listing." 20 C.F.R. §§ 416.925(c)(3), 404.1525(c)(3).

An ALJ will find that an impairment "meets the requirements of a listing when it satisfies all the criteria of that listing." 20 C.F.R. § 416.925(c)(3) (emphasis original); see Hale v. Sec'y of Health & Human Servs., 816 F.2d 1078, 1083 (6th Cir. 1984). An ALJ will find that an impairment is "medically equivalent to a listed impairment ... if it is at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. § 416.926(a).

Medical equivalence can be found in one of three ways:

> (1)(i) If [the claimant has] an impairment that is described in the Listing of Impairments in appendix 1 of subpart P of part 404 of this chapter, but —
> (A) [the claimant does] not exhibit one or more of the findings specified in the particular listing, or
> (B) [the claimant] exhibit[s] all of the findings, but one or more of the findings is not as severe as specified in the particular listing,
> (ii) [The Administrative Law Judge] will find that [the claimant's] impairment is medically equivalent to that listing if [the claimant has] other

> findings related to [the claimant's] impairment that are at least of equal medical significance to the required criteria.
>
> (2) If [the claimant has] an impairment(s) that is not described in the Listing of Impairments in appendix 1 of subpart P of part 404 of this chapter, [the Administrative Law Judge] will compare [the claimant's] findings with those for closely analogous listed impairments. If the findings related to [the claimant's] impairment(s) are at least of equal medical significance to those of a listed impairment, [the Administrative Law Judge] will find that [the claimant's] impairment(s) is medically equivalent to the analogous listing.
>
> (3) If [the claimant has] a combination of impairments, no one of which meets a listing described in the Listing of Impairments in appendix 1 of subpart P of part 404 of this chapter (see § 416.925(c)(3)), [the Administrative Law Judge] will compare [the claimant's] findings with those for closely analogous listed impairments. If the findings related to [the claimant's] impairments are at least of equal medical significance to those of a listed impairment, [the Administrative Law Judge] will find that [the claimant's] combination of impairments is medically equivalent to that listing.

20 C.F.R. §416.926(b).

Here, the ALJ expressly considered Listings 1.15, 1.16, 1.18, and 6.06. (Tr. 4569). The ALJ found that the record did not establish the medical signs, symptoms, laboratory findings, or functional loss required for listing-level severity. (Id.) Although this discussion was concise, the balance of the decision supplies a sufficient basis for meaningful review and supports the conclusion.

Notably, Listing 1.16 requires lumbar spinal stenosis resulting in compromise of the cauda equina, in addition to the Listing's specified clinical and functional requirements. The August 2017 MRI cited by the ALJ showed nerve-root clumping from L2 through S1 and mild dextroscoliosis but expressly showed no central-canal stenosis and no foraminal stenosis. (Tr. 4574.) The MRI evidence therefore does not establish the threshold stenosis component of Listing 1.16.

Further, while the record reflects some right-lower-extremity deficits, it also supports the ALJ's conclusion that Plaintiff did not show the Listing's requisite severity and functional loss. As discussed above, the record repeatedly documented independent ambulation, normal or near-normal gait, the ability to stand without difficulty, negative straight-leg raising, normal or largely normal range of motion, intact left-leg strength and reflexes, and largely focal right-sided findings. (Tr. 4573-76.) It is Plaintiff's burden to demonstrate that each criterion of the Listing was met or equaled. He did not do so here.

Nor has Plaintiff identified evidence supporting a medical-equivalence finding. The ALJ noted that no acceptable medical source designated to make equivalence findings had found that Plaintiff's impairments medically equaled a Listing. (Tr. 4569). On this record, the ALJ's Step Three determination is supported by substantial evidence.

As noted above, it is Plaintiff's burden to show that the ALJ's findings are unsupported by substantial evidence. Here, Plaintiff argues only that evidence exists from which the ALJ could have drawn a different conclusion. That is not enough. *See Jones v. Com'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003) ("[T]he Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of the evidence, supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ."). The evidence summarized above easily constitutes "substantial evidence" to support the ALJ's determination that Plaintiff's subjective complaints were not fully consistent with the record. While Plaintiff may disagree with that assessment, he has failed to demonstrate any factual or legal error. A court may not reverse so long as the ALJ's analysis falls within a "zone of choice," a standard that is met here.

*3. Evaluation of Plaintiff's Bowel and Bladder Symptoms*

Plaintiff argues that the ALJ's symptom evaluation is not supported by substantial evidence and fails to build a logical bridge to the RFC. Plaintiff further argues that the ALJ failed to accommodate bowel and bladder accidents, pain flares, sitting intolerance, balance limitations, and intermittent cane use. Plaintiff's contentions lack merit.

Here, the ALJ properly evaluated his subjective symptoms and an ALJ's subjective symptom determination is given great weight and deference. *Jones v. Comm'r of Soc. Sec*., 336 F.3d 469, 476 (6th Cir. 2003) ("Upon review, we are to accord the ALJ's determinations of credibility great weight."). As noted by the Commissioner, in assessing a plaintiff's allegations, the ALJ looks at both the objective medical evidence and other relevant evidence, including: 1) daily activities; 2) location, duration, frequency, and intensity of pain or symptoms; 3) precipitating and aggravating factors; 4) the type, dosage, effectiveness, and side effects of any medication; 5) treatment, other than medication, to relieve pain; 6) any measures used to relieve pain; and 7) other factors concerning functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. § 404.1529(c). However, an ALJ need not discuss all seven factors. Social Security Ruling 16-3p, 2017 WL 5180304.

Here, the ALJ acknowledged that Plaintiff's medically determinable impairments could reasonably cause some of the alleged symptoms. (Tr. 4571). Next, in compliance with 20 C.F.R. § 404.1529 and SSR 16-3p, the ALJ evaluated the alleged intensity, persistence, and functional effect of those symptoms against the longitudinal medical evidence, course of treatment, examinations, reported daily activities, and the medical opinions.

With respect to physical and neurological symptoms, the ALJ discussed the severe 2015 motorcycle accident, and the ensuing injuries, hospitalization, rehabilitation, multiple procedures, spinal and pelvic fixation, pain, right-leg weakness, sensory changes, and neurological diagnoses. (Tr. 4572–75). The ALJ also recognized objective evidence supporting some limitation, including decreased right-sided reflexes and strength, weakness in right ankle plantar flexion and eversion, intermittent limping, nerve-root clumping, cauda equina spinal cord injury, and post-traumatic arachnoiditis. (Tr. 4573–76). The ALJ accommodated those impairments by limiting Plaintiff to light work with additional postural, environmental, and hazard restrictions. (Tr. 4570, 4576.)

Furthermore, substantial evidence supported the ALJ's conclusion that Plaintiff's allegations did not establish greater limitations. In February 2016, Plaintiff reported that he was doing well, ambulated without an assistive device, and had improved weakness. (Tr. 4572). In August 2016, he reported minimal to no complaints other than improving mild joint and bone pain; his examination showed a trace antalgic gait, no right plantar-flexion strength, but otherwise normal lower-extremity strength, healed wounds, and stable imaging. (Tr. 4573). In February 2017, he ambulated without assistance, had a normal gait, normal left-leg strength, and full motion in his hips, knees, and ankles. (Id.)

The ALJ further cited the neurological records. In December 2017, Plaintiff reported that Cymbalta helped, that he had no trouble walking on uneven ground, and that he had not fallen or tripped; he rated his pain at two out of ten. (Tr. 4574). In 2018, examinations repeatedly documented the ability to stand without difficulty and ambulate independently, normal gait at several visits, negative straight-leg raising, and localized right-sided deficits while otherwise showing normal strength. (Tr. 4574–75). In 2019,

Plaintiff reported he was doing well on his current medications and denied gait disturbance. (Tr. 4575).

The ALJ also permissibly considered Plaintiff's activities. During the relevant period, Plaintiff reported doing laundry, cleaning, yard work, and riding-mower work; driving; shopping; preparing food; dining at restaurants; reading; using a computer; and playing video games. (Tr. 4570, 4575–76.) The ALJ did not treat these activities as equivalent to sustained employment. Instead, the ALJ considered them as one factor, with treatment history, examinations, and opinion evidence, when evaluating the asserted severity of symptoms.

The ALJ also reasonably found that a cane restriction was unsupported. The ALJ acknowledged that the record reflected use of a cane during the initial recovery period and Plaintiff's hearing testimony about cane use. (Tr. 4576.) But the ALJ cited repeated examinations demonstrating normal gait or independent ambulation without an assistive device, as well as later reports denying gait disturbance. (Id.) On this record, substantial evidence supports the conclusion that Plaintiff did not establish frequent or medically necessary cane use.

Regarding Plaintiff's bladder-specific argument, the ALJ's decision considered the early intermittent-incontinence evidence, the surgery, limited post-recovery treatment and complaints, repeated later denials of broader genitourinary concerns, and other evidence reflecting improvement and functioning. (Tr. 4571-4574) The record contained no medical opinion assigning a specific frequency of accidents, a need for unscheduled breaks, a particular off-task percentage, or a work-preclusive absenteeism limitation. The

ALJ could reasonably find that Plaintiff had not established such limitations. As such, the ALJ's decision in this regard is substantially supported.

4. *Hypothetical Question*

Plaintiff's final assignment of error asserts that the ALJ's analysis at step-five is not supported by substantial evidence. Namely, Plaintiff contends that the ALJ's RFC should have considered the VE's response to the hypothetical questions regarding unscheduled restroom breaks, off-task time, and absences. Plaintiff's assertions are unavailing.

First, the ALJ complied with the Appeals Council's directive to obtain supplemental vocational evidence. The VE identified representative work at the assessed light RFC, including packager, merchandise marker, and cashier. (Tr. 4578-80) The VE further testified that work remained available under additional sedentary, mental, and hand-held-assistive-device hypotheticals. Id. The VE explained that the DOT does not address certain limitations, including use of a hand-held device and standing/walking limitations, and stated that those opinions were based on her education, experience, and knowledge. (Tr. 4579). The ALJ thus identified the apparent gaps in the DOT and adequately resolved them before relying on the testimony under SSR 00-4p.

The VE's response to a hypothetical involving work-preclusive off-task time or absenteeism does not compel reversal. Such a response establishes disability only if the underlying off-task or absenteeism restrictions are supported by the record and adopted by the ALJ. "It is well established that an ALJ may pose hypothetical questions to a vocational expert and is required to incorporate only those limitations accepted as

credible by the finder of fact." *Casey v. Sec'y of Health & Human Servs*., 987 F.2d 1230, 1235 (6th Cir. 1993) citing *Hardaway v. Sec'y of Health & Human Servs.,* 823 F.2d 922, at 927-28. As explained, substantial evidence supports the ALJ's decision not to include those limitations in the RFC.

Accordingly, the ALJ's decision is substantially supported in this regard.

**III. Conclusion**

For the reasons explained herein, **IT IS ORDERED THAT** Defendant's decision is **SUPPORTED BY SUBSTANTIAL EVIDENCE**, and is **AFFIRMED. IT IS FURTHER ORDERED THAT** that this case is **CLOSED**.

*s/Stephanie K. Bowman*
Stephanie K. Bowman
Chief United States Magistrate Judge